**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**
**EASTERN DIVISION**

| | |
|---|---|
| JILL TOMPKINS, on behalf of herself and all others similarly situated, | ) ) ) Civil Action No.: |
| Plaintiff, | ) ) ) |
| v. | ) **CLASS/COLLECTIVE ACTION** ) **COMPLAINT** ) |
| FERNY PROPERTIES, LLC. d/b/a THE NORTHERN GENTLEMEN'S CLUB, and DOE DEFENDANTS 1-10, | ) ) ) **JURY TRIAL DEMANDED** |
| Defendants. | ) ) ) ) |

Plaintiff Jill Tompkins ("Tompkins" or "Plaintiff"), individually and on behalf of all similarly situated employees, brings this Class/Collective action lawsuit against Defendant Ferny Properties, LLC., and Doe Defendants 1-10 ("The Northern Club" or "Defendant"), seeking to recover for Defendant's violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.* (the "FLSA"), the North Dakota Century Code, § 34-01, *et seq.*, the North Dakota Minimum Wage and Work Conditions Order, N.D. Admin. Code § 46-02-07, *et seq.*, and North Dakota common law.  Plaintiff, on behalf of herself and all others similarly situated, alleges as follows:

## INTRODUCTION

1.    As explained herein, under applicable employment laws all employees are entitled to a defined minimum wage and premium overtime compensation for all hours worked in excess of forty in a given work week (unless the employee is determined to be exempt), and are protected from having improper deductions taken from their wages, including their tips. However, Defendant (as defined herein) improperly classified Plaintiff and other exotic

entertainers ("Dancers") as "independent contractors."  Consequently, Defendants failed to pay Dancers at least the applicable minimum wage.  In addition, Defendants required Dancers to work in excess of forty hours per work week, and then failed to pay them premium overtime compensation. Further, Defendant improperly collected a portion of the tips Plaintiff and other Dancers receive from customers.   As set forth herein, such conduct is in violation of applicable state and federal wage and hour laws.

2.      Dancers who work, or have worked, for Defendant, including Plaintiff and her current and former co-workers, work in an "unorganized" industry where many workers are "disenfranchised" by the wide disparities in bargaining power between workers and club owners. *See* Holly Wilmet, *Naked Feminism: The Unionization of the Adult Entertainment Industry*, 7 Am. U.J. Gender Soc. Pol'y & L. 465, 466 (1999).

3.      Accordingly, adult entertainment clubs such as those operated by Defendants are well-positioned to take advantage of Dancers and routinely deny them basic workplace rights.

4.      Over the past two decades, the United States Department of Labor ("DOL") and courts across the country have recognized that Dancers are employees, not independent contractors, and thus entitled to protection under various state and federal wage and hour laws.

5.      Despite these significant strides, adult night clubs across the country still routinely deny Dancers the basic protections they are accorded under state and federal law.  Indeed, The Northern Club is no exception.  As set forth herein, The Northern Club regularly deprives Dancers of their rights under federal law, as well as the laws of North Dakota.  Plaintiff brings this lawsuit to address these improper pay practices.

## SUMMARY OF CLAIMS

6.      Plaintiff brings this action as a collective action to recover unpaid wages,

including inappropriately withheld tips, pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq*. ("FLSA" or the "Act").

7.      In particular, Plaintiff brings this suit, pursuant to Section 216(b) of the FLSA, on behalf of the following similarly situated persons:

> All current and former Dancers who have worked for Defendants within the statutory period covered by this Complaint and elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 216(b) (the "Nationwide FLSA Class").

8.      Plaintiff also brings this action as a state-wide class action to recover unpaid wages, including inappropriately withheld tips, pursuant to the North Dakota Century Code § 34-01, *et seq*., the North Dakota Minimum Wage and Work Conditions Order, N.D. Admin. Code § 46-02-07, and common law (the "ND State Laws").

9.      Specifically, Plaintiff brings this suit, pursuant to Fed. R. Civ. P. 23,  on behalf of a North Dakota class of similarly situated persons composed of:

> All current and former Dancers who have worked for Defendants in the State of North Dakota during the statutory period covered by this Complaint (the "ND Class").

10.      Plaintiff alleges on behalf of the Nationwide FLSA Class that they are: (i) entitled to unpaid minimum wages from Defendant for hours worked for which Defendants failed to pay the mandatory minimum wage; (ii) entitled to unpaid overtime wages for all hours worked in excess of forty in a work week; (iii) entitled to the tips that Defendant withheld from them, in violation of 29 U.S.C. § 203(m)(2)(B); and (iv) entitled to liquidated damages pursuant to  29 U.S.C. § 216(b).

11.      Plaintiff alleges on behalf of the ND Class that Defendants violated the ND State Laws by, *inter alia*: (i) failing to pay Dancers the appropriate minimum wages for all hours worked; (ii) improperly denying Dancers overtime wages for all hours worked in excess of forty

hours in a work week; and (iii) inappropriately withholding and/or deducting unlawful amounts from the tips earned by the ND Class.

## PARTIES

12.    Plaintiff Jill Tompkins is a resident and citizen of the State of New York who was employed by Defendant as a "Dancer" at The Northern Gentlemen's Club at 325 10th Street N., in Fargo, North Dakota, from March 2017 and working at various times until approximately May 2017.

13.    While employed by Defendant, Plaintiff was improperly classified as an independent contractor and, consequently, Defendant failed to compensate Plaintiff properly for all hours worked.

14.    Plaintiff consents in writing to be a Plaintiff in this action and will file her executed Consent to Sue form.

15.    Defendant Ferny Properties, LLC. d/b/a The Northern Gentlemen's Club is a North Dakota limited liability corporation with its principal place of business located in Fargo, North Dakota.  Upon information and belief, Defendant Ferny Properties, LLC. owns and operates The Northern Gentlemen's Club located at 325 10th Street N., Fargo, North Dakota.

16.    Upon information and belief, at all relevant times, Defendant's annual gross volume of sales made or business done was not less than $500,000.00.

17.    At all relevant times Defendants have transacted business, including the employment of Dancers, within the State of North Dakota, including within this district.

18.    Plaintiff is unaware of the names and the capacities of those defendants sued as DOES 1 through 10 but will seek leave to amend this Complaint once their identities become known to Plaintiff.

531291.1                                                    4

19.     Upon information and belief, Plaintiff alleges that at all relevant times each defendant was the officer, director, employee, agent, representative, alter ego, or co-conspirator of the Defendant. In engaging in the alleged conduct herein, defendants acted in the course, scope of, and in furtherance of the aforementioned conspiracy. Accordingly, unless otherwise specified herein, Plaintiff will refer to all defendants collectively as "Defendant" and each allegation pertains to each of the defendants.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201 *et seq*.

21.     This Court also has original jurisdiction over all claims in this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). This is a putative class action whereby: (i) the proposed Rule 23 class consists of over 100 or more members; (ii) at least some of the members of the proposed class, including Plaintiff Tompkins, have a different citizenship from Defendant; and (iii) the claims of the proposed Rule 23 class exceed $5,000,000.00 in the aggregate.

22.     This Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims derive from a common nucleus of operative facts.

23.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(ii) as a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district, and Defendant is subject to personal jurisdiction in this district.

24.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## FACTUAL ALLEGATIONS

25.     The crux of the FLSA and ND State Laws is, *inter alia*,: (i) that all employees are entitled to be paid mandated minimum wages for all hours worked; (ii) that all employees are entitled to premium overtime compensation for all hours worked in excess of forty hours per work week; and (iii) that all tips earned by an employee are the property of the employee and may not be withheld by the employer.

26.     Contrary to these basic protections, The Northern Club improperly classifies its Dancers, including Plaintiff, as "independent contractors" despite The Northern Club's near total control over them.  Consequently, Dancers are, and have been:  (i) deprived of the mandated minimum wage for all hours they worked; (ii) deprived of premium overtime compensation for all hours worked in excess of forty hours per work week; (iii) forced to improperly share a percentage of their tips with The Northern Club; and (iv) forced to reimburse The Northern Club for its ordinary business expenses.

27.     Plaintiff and the members of the Classes are, or were, Dancers who worked at Defendant's location at 325 10th Street N. operating under the name "The Northern Gentlemen's Club"

28.     Defendant operates The Northern Club under uniform policies applicable to all the members of the Classes.  Through these policies and procedures, Defendant maintains significant supervision and control over Plaintiff and members of Classes.

29.     Notwithstanding Defendant's classification of Dancers as independent contractors, as set forth below, due to the amount of control Defendant has over their Dancers, Dancers are legally Defendant's employees.

## **Hiring, Firing, and Scheduling**

30.     Defendant has the power to hire and fire Dancers at will, and has rules governing the conditions under which Dancers work.

31.     The Northern Club requires Dancers to schedule their shifts two months in advance.  Although Dancers are allowed to request specific shifts, The Northern Club's management exercises complete control over the final schedule.  The Northern Club can require certain Dancers to work particular shifts and can for any reason deny a Dancer's request to work a particular shift.

32.     The Northern Club controls the work hours of all dancers and scheduled shifts in advance. While Plaintiff was an out-of-town performer and The Northern Club allowed some flexibility in her schedule, she felt tremendous pressure to not cancel her shift once she was booked.

33.     Dancers are subject to discipline in the forms of fines and possible termination if they do not arrive for a shift at the predetermined time. Defendant went so far as to post a threatening letter in the dressing room to all dancers advising them of this policy.

34.     Plaintiff's schedule varied during the course of her employment, though she typically tried to work every day during her trips to The Northern Club.

35.     On several occasions, Plaintiff worked more than forty hours in a given workweek.  Despite this, Defendant did not pay her overtime wages.  Indeed, Defendant never pays minimum or overtime wages to any Dancers, regardless of the number of hours the Dancers work.

36.    Dancers are required to check in with one of the Club DJs as soon as they arrive for their shift.  They must report to the main floor by their scheduled start time or they will be assessed additional fees.

37.    Defendant's scheduling policy also requires that all Dancers stay until the end of their shift, under threat of fines or termination.  Incredibly, even if a Dancer falls ill during a shift, she will not be permitted to leave the club immediately unless she pays the entire House Fee to the manager on duty.

38.    When the club lights are turned on at 2:00 a.m., all Dancers must return to the dressing room immediately to pay their House Fees and remain until club management gives them permission to leave.  The Dancers are not compensated in any way for the time they spend waiting to leave.

### House Fees & Fines

39.    Rather than pay its Dancers the applicable minimum wage (either the applicable state minimum wage or the federal minimum wage, whichever is higher), Defendant classifies their Dancers as independent contractors and requires their Dancers to pay Defendant in order to work at Defendant's establishment.  Consequently, Defendant does not compensate Dancers in an amount at least equal to the mandated minimum wage for each hour worked.

40.    Despite routinely charging customers a "cover fee" at the door, and selling food and alcohol, Defendant retains all of that income and does not pay Dancers any wages.

41.    Typically, there are "House Fees" for each shift worked.  Dancers ready to perform at 5:00 p.m. are required to pay a fee of $60. Dancers ready to perform at 6:00 p.m. are required to pay a fee of $80, Dancers ready to perform at 7:00 p.m. are required to pay a fee of $100 and Dancers who were ready to perform at 9:00 p.m. or later are required to pay a fee of

$150. Dancers who arrived to the club later than approximately 9:30 p.m. were told they could not perform.

42.    When Dancers travel to perform at Defendant's club from out of town, they can stay in Defendant's "dormitory" housing during their stay. The cost of room and board is added to Dancers' fee total for each night.

43.    Dancers must pay all fees every night they work regardless of the amount of tips they receive during their shift.  Accordingly, a Dancer must pay the fees even if that means borrowing money from another Dancer or using an ATM machine.  Defendant's system of fees, fines, and mandatory tips creates a realistic possibility that a Dancer may finish a shift with a negative balance, owing Defendant money from the Dancer's personal finances and taking home zero dollars for a day or night of work.

44.    Dancers are not permitted to perform if they have any outstanding fees or fines. Indeed, Defendant maintains a list of all Dancers and the current fines owed.

**Tip Retention & Mandatory Tip Outs**

45.    Tips received by an employee belong to the employee and an employer has no ownership interest in said tips.  Section 203(m)(2)(B) of the FLSA specifically provides that "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit."  According to the DOL's regulations, "[t]ips are the property of the employee whether or not the employer has taken a tip credit under section 3(m) of the FLSA." 29 C.F.R. § 531.52.

46.     Despite the law's clear requirements, Defendant unlawfully retains a portion of tips Dancers received from Defendant's customers.

47.     Moreover, Defendant also mandates the fees a Dancer must charge customers for her services.  By way of example, Defendant maintains a policy establishing the amount a Dancer is required to charge for private performances.

48.     Dancers are required to follow the following schedule of private dance prices, with Defendants receiving a portion of each amount:

|  | Total Price | Dancer | Defendant |
|---|---|---|---|
| Lap Dance | $25.00 | $20.00 | $5.00 |
| "VIP Room" (20 min.) | $300.00 | $180.00 | $120.00 |

49.     Defendant also subjects Dancers to mandatory tip-outs.  That is, Dancers are required to share their tips with certain of Defendant's employees.  Importantly, the individuals with whom Defendant requires its Dancers to share their tips do not provide customer service or receive tips themselves.

50.     Upon information and belief, Defendant uses these mandatory Dancer tip-outs to offset Defendant's ordinary business expenses.  Stated another way, Defendant requires Dancers to share their tips with individuals so that Defendant can then reduce their labor costs by having the Dancers supplement the compensation Defendant pays their other employees.

51.     Defendant has a *mandatory* tip out policy whereby Dancers must each pay a minimum of (i) $5 or $10 to security or the VIP attendant for every private dance. Dancers also felt it was compulsory to tip $10 to the club's DJ, per shift. If the DJ does not feel adequately tipped, the Dancers will be subject to bad music during their performances.

52.     The aforementioned amounts are the required minimum tip-outs, and Defendant requires Dancers to pay all tips by the end of their shift, regardless of how much money the Dancer has earned during the shift.

53.     Dancers often felt pressured and controlled by the floormen at Defendant's club. Plaintiff and other Dancers believed managers and floormen were closely monitoring all of their transactions.   In doing so, they pressure the Dancers to tip them accordingly based on their nightly earnings and private dances.

54.     As a result of the mandatory house fees, required tip-outs, and assessed fines, Dancers sometimes receive little to no actual compensation despite hours of work.

## Additional Control

55.     As described below, Defendant exercised significant control over the Dancers' work environment through a variety of policies and rules.

56.     Defendant requires Dancers to wear certain types of clothes.  Dancers are required to have their hair and makeup done, to look nice for their performances, and additionally were required to wear 3-inch "stripper shoes" during all of their performances.  Defendant exercises authority over Dancers' apparel by refusing to let a Dancer perform if her clothing does not meet Defendant's requirements.  Defendant does not reimburse Dancers for the cost of their apparel. In addition, Defendant does not pay for the cost of laundering or maintaining these required outfits.

57.     Upon check in with the Club's DJ, the Dancers were subject to a visual inspection whereby the Club DJ would inspect the Dancers' outfits, makeup, and appearance to decide whether they were dressed appropriately and decide whether they could perform their shift.

58.     Dancers were not permitted to remove their shoes at any time during their shift. Even though Plaintiff suffers from Fibromyalgia and wearing her shoes for her entire shift caused her to experience extreme pain, she was not permitted to remove them and take even a short break.

59.     A Dancer's stage performance must comply with certain rules set by Defendant. Dancers were required to go on a stage rotation when called by the DJ, unless they were in a VIP Room. The stage performances take precedence, and Dancers are often forced to break off private interactions with customers to fulfill the rotation. Dancers can not voluntarily skip their turn in the rotation. The club's DJ controls the songs played. Although Dancers can ask for a certain type of music, the DJ exercises full and final control over the music selection. In many cases, a Dancer is forced to dance to songs chosen by another Dancer or chosen solely by the DJ.

60.     Dancers felt tremendous pressure to accept when a customer requests them for a "VIP Room" dance. If a Dancer declines, she is fired.

61.     Dancers were also required to perform line-ups as part of VIP Packages sold by the Northern Club. During these line ups, it was mandatory that all Dancers go on stage. For such line ups, Dancers are often required to break off private interactions with customers to return to the performance stage.

62.     As part of these line ups, Dancers are required to have some type of interaction with the "VIP" such as a lap dance or otherwise. Although the Northern Club charges between $100 and $200 for these VIP Packages, Dancers receive no portion of this fee. If a Dancer chose not to participate in this lineup or mandatory VIP interaction, the Dancer was fined.

63.     In short, The Northern Club maintains significant supervision and control over Plaintiff and members of the Classes and sets the rules governing the conditions under which Dancers work. These rules are applied uniformly to Plaintiff and all other Dancers.

64.     Further, The Northern Club determines the rate and method of payment Dancers receive, including but not limited to the percentage of tips that The Northern Club retains and the fact that Dancers do not receive any wages while working at the club.

65.     The Northern Club has been unjustly enriched to the detriment of the Classes by: (i) requiring Dancers to pay money out of their tips to subsidize the ordinary business expenses of the club; (ii) requiring Dancers to forfeit a portion of their tips to The Northern Club; (iii) paying Dancers less than the mandated minimum wage (indeed, no wages whatsoever) while failing to comply with the requirements for doing so; (iv) failing to pay Dancers premium overtime compensation for all hours worked in excess of forty in a work week; and (v) and requiring Dancers to advertise and promote the club, without compensating Dancers for their time.

66.     At all times relevant to this Complaint, Plaintiff believed she was, and in fact was, an employee of The Northern Club.

67.     Evidence generally reflecting the number of uncompensated hours worked by Dancers is in the possession of The Northern Club.

68.     While Plaintiff is unable to state at this time the exact amount owed to the Classes, Plaintiff believes that such information will become available during the course of discovery.  Irrespective of the foregoing, when an employer fails to keep complete and accurate time records, employees may establish the hours worked solely by their testimony and the burden of overcoming such testimony shifts to the employer.  *See Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680 (1946).

## CLASS & COLLECTIVE ACTION ALLEGATIONS

69.     Plaintiff brings this action on behalf of the Nationwide FLSA Class as a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. §216(b).  Plaintiff also brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and the ND Class for claims under the ND State Laws.

70.    The claims under the FLSA may be pursued by those who opt-in to this case pursuant to 29 U.S.C. § 216(b).  The claims brought pursuant to the ND State Laws may be pursued by all similarly-situated persons who do not opt out of the ND Class pursuant to Fed. R. Civ. P. 23.

71.    Upon information and belief, the members of each of the Classes are so numerous that joinder of all members is impracticable.  While the exact number of the members of these Classes is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes there are over one hundred individuals in each of the Classes.

72.    Defendant has acted or has refused to act on grounds generally applicable to the Classes, thereby making final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole, appropriate.

73.    The claims of Plaintiff are typical of the claims of the Classes she seeks to represent.  Plaintiff and the members of the Classes work or have worked for The Northern Club and were subject to the same compensation policies and practices, including not being compensated for all hours worked.

74.    Common questions of law and fact exist as to the Classes that predominate over any questions only affecting them individually and include, but are not limited to, the following:

(a)    whether Plaintiff and Dancers were improperly classified as independent contractors by Defendant;

(b)    whether Defendant failed to pay Dancers statutorily required wages for each hour worked;

(c)    whether Plaintiff and Dancers were required to pay Defendant, in cash, fees for each shift worked;

(d)    whether Defendant improperly retained any portion of Plaintiff's and Dancers' tips;

(e)    whether Defendant has failed to pay overtime compensation for all hours worked in excess of forty per work week;

(f)    whether Plaintiff and members of the Classes are entitled to compensatory damages, and if so, the means of measuring such damages;

(g)    whether Plaintiff and members of the Classes are entitled to restitution and/or liquidated damages; and

(h)    whether Defendant is liable for attorneys' fees and costs.

75.    Plaintiff will fairly and adequately protect the interests of the Classes, as her interests are aligned with those of the members of the Classes.  She has no interests adverse to the Classes she seeks to represent, and she has retained competent and experienced counsel.

76.    The class action/collective action mechanism is superior to other available methods for a fair and efficient adjudication of the controversy.  The damages suffered by individual members of the Classes may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the Classes to individually seek redress for the wrongs done to them.

77.    Plaintiff and the Classes she seeks to represent have suffered and will continue to suffer irreparable damage from Defendant's illegal pay policies, practices and customs.

78.    Defendant has acted willfully and has engaged in a continuing violation of the FLSA and ND State Laws.

**FIRST CLAIM FOR RELIEF**
**Fair Labor Standards Act**
**(On Behalf of the Nationwide FLSA Class)**

79.    Plaintiff, on behalf of herself and the Nationwide FLSA Class, re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

80.    At all relevant times, Defendant has had gross annual revenues in excess of $500,000.00.

81.     At all relevant times, Defendant has been and continue to be, employers engaged in commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

82.     At all relevant times, Defendant has employed, and/or continues to employ, Plaintiff and each of the Nationwide FLSA Class Members within the meaning of the FLSA.

83.     Pursuant to Defendant's compensation policies, rather than pay Dancers the federally-mandated wages, Defendant's improperly classified Plaintiff and other Dancers as independent contractors.

84.     As a result of Defendant's willful practices, The Northern Club was not entitled to pay Plaintiff and the members of the Nationwide FLSA Class less than the mandated wage for all hours worked.

85.     Defendant has violated and, continue to violate, the FLSA, 29 U.S.C. §§ 201 *et seq.* The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

86.     Due to Defendant's FLSA violations, Plaintiff and the members of the Nationwide FLSA Class are entitled to recover from Defendant: compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

**SECOND CLAIM FOR RELIEF**
**North Dakota Century Code § 34-06 *et seq.***
**Minimum Wage Violations**
**(On Behalf of the ND Class)**

87.     Plaintiff, on behalf of herself and the members of the ND Class, re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein. At all relevant times, Defendant has employed, and/or continues to employ, Plaintiff and each of the ND Class Members within the meaning of the North Dakota Century Code § 34-06-01.

88.     At all relevant times in the period encompassed by this Complaint, Defendant has had a willful policy and practice of improperly classifying Plaintiff and Dancers as independent contractors and, consequently, failing to pay these individuals the applicable minimum wage for each hour worked.

89.     Pursuant to Defendant's compensation policies, Defendant improperly classified Dancers as independent contractors rather than pay Plaintiff and Dancers the North Dakota minimum wage.

90.     As a result of Defendant's willful practices, Defendant was not entitled to pay Plaintiff and the members of the ND Class less than the North Dakota minimum wage for all hours worked.

91.     Defendants have violated and, continue to violate, the North Dakota Century Code, § 34-06 *et seq.*

92.     Due to the Defendant's violations, Plaintiff, on behalf of herself and the members of the ND Class, are entitled to recover from Defendant the amount of unpaid minimum wages, attorneys' fees and costs. Further, if though discovery it is discovered that Defendant has been found liable for previous wage claims within the preceding year, Plaintiff on behalf of herself and the members of the ND Class, are entitled to double or treble unpaid wages.

<u>**THIRD CLAIM FOR RELIEF**</u>
**North Dakota Minimum Wage and Work Conditions Order**
**N.D. Admin. Code § 46-02-07-01 *et seq.***
**Overtime Wage Violations**
**(On Behalf of the ND Class)**

93.     Plaintiff, on behalf of herself and the members of the ND Class, re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

94.     North Dakota Century Code Title 34 and N.D. Admin. Code § 46-02-07-02 promulgated thereunder require employers to pay non-exempt employees one-and-one half times the regular rate of pay for all hours worked in excess of forty hours in any one workweek.

95.     At all relevant times, Defendant has employed, and/or continues to employ, Plaintiff and each of the ND Class Members within the meaning of the North Dakota Century Code § 34-06-01.

96.     At all relevant times in the period encompassed by this Complaint, Defendant has had a willful policy and practice of refusing to pay premium overtime compensation for all hours worked in excess of 40 hours per workweek.

97.     Pursuant to Defendant's policies and practices of classifying Plaintiff and Dancers as independent contractors, Plaintiff and the members of the ND Class were not paid overtime for all hours worked in excess of forty per week.

98.     Defendant has violated and, continues to violate, the North Dakota Minimum Wage and Work Conditions Order, N.D. Admin. Code § 46-02-07-02 and the North Dakota Administrative Code § 46-03-01-01.

99.     Due to the Defendant's violations, Plaintiff, on behalf of herself and the members of the ND Class, are entitled to recover from Defendant the amount of unpaid overtime wages, attorneys' fees and costs.

**FOURTH CLAIM FOR RELIEF**
**Minimum Wage and Work Conditions Order N.D. Admin. Code § 46-02-07-01 *et seq*. and**
**North Dakota Century Code § 34-14-04**
**Improper Deduction of Tips**
**(On Behalf of the ND Class)**

100.    Plaintiff, on behalf of herself and the ND Class Members, re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

101.    At all relevant times, Defendant has employed, and/or continues to employ, Plaintiff and each of the ND Class Members within the meaning of the North Dakota Century Code § 34-06-01.

102.    Pursuant to the North Dakota Century Code § 34-14-04, Plaintiff and the members of the ND Class were entitled to receive all compensation due and owing to them on their regular payday.

103.    As a result of Defendant's unlawful policies, Plaintiff and the members of the ND Class have been deprived of compensation due and owing.

104.    Further, due to Defendant's policy of deducting amounts from the tips of Plaintiff and the ND Class to offset business expenses, Plaintiff and the ND Class were subject to improper deductions from their compensation as they did not authorize such deduction in writing.

105.    Pursuant to the North Dakota Minimum Wage and Work Conditions Order, N.D. Admin. Code § 46-02-07-03, Plaintiff and the members of the ND Class are only required to share tips and gratuities among tipped employees and only if a 50 percent plus one of employees approve it by vote.

106.    Defendant held no such vote to authorize tip pooling at their establishment and further violated the Minimum Wage and Work Conditions Order by requiring tipped Dancers to share their tips with non-tipped employees.

107.    Plaintiff, on behalf of herself and the members of the ND Class, are entitled to recover from Defendant the amount of unpaid compensation and interest on said unpaid compensation.

## FIFTH CLAIM FOR RELIEF
### ND Common Law - Unjust Enrichment/Quantum Meruit
### (On Behalf of the ND Class)

108.    Plaintiff, on behalf of herself and the ND Class Members, re-allege and incorporates by reference the paragraphs above as if they were set forth again herein.

109.    Plaintiff and the members of the ND Class were employed by Defendant within the meaning of the ND State Laws.

110.    At all relevant times, Defendant has had a willful policy and practice of denying Dancers their full share of gratuities.

111.    During the class period covered by this Complaint, Defendant has had a willful policy and practice of having Dancers subsidize Defendant's business expenses by requiring Dancers to tip certain individuals a required minimum amount.

112.    Moreover, Plaintiff and Dancers were subjected to unlawful deductions from their gratuities.

113.    Defendant retained the benefits of their unlawful deductions from the gratuities from Plaintiff and Dancers under circumstances which rendered it inequitable and unjust for Defendant to retain such benefits.

114.    Defendant was unjustly enriched by subjecting Plaintiff and Dancers to such unlawful deductions.

115.    Defendant has had a willful policy and practice of requiring Dancers to participate in promotional events at the club without compensation.

116.    Defendant retained the benefits of Plaintiff's and the ND Class Members' time and promotional services under circumstances which rendered it inequitable and unjust for Defendant to retain such benefits.

117.    Defendant was unjustly enriched by benefiting from the uncompensated time and efforts of Plaintiff and the ND Class Members to promote Defendant's business.

118.    As direct and proximate result of Defendant's unjust enrichment, Plaintiff and the members of the ND Class have suffered injury and are entitled to reimbursement, restitution and disgorgement from Defendant of the benefits conferred by Plaintiff and the ND Class.

119.    Plaintiff the members of the ND Class, are entitled to reimbursement, restitution and disgorgement of monies received by Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself, the Nationwide FLSA Class, and members of the ND Class, prays for relief as follows:

a)  Designation of this action as a collective action on behalf of the Nationwide FLSA Class and prompt issuance of notice pursuant to 29 U.S.C. §216(b) to all Nationwide FLSA Class members, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual consent to sue forms pursuant to 29 U.S.C. § 216(b);

b)  Designation of Plaintiff as representative of the Nationwide FLSA Class;

c)  Designation of counsel of record as counsel for the Nationwide FLSA Class;

d)  Certification of this action as a class action on behalf of the ND Class pursuant to Federal Rule of Civil Procedure 23;

e)  Designation of Plaintiff as representatives of the ND Class;

f)  Designation of counsel of record as counsel for the ND Class;

g)  A Declaration that Defendants have violated the FLSA;

h)  A Declaration that Defendants have violated the North Dakota Century Code;

i)  A Declaration that Defendants have violated the North Dakota Minimum Wage and Work Conditions Order;

j)  A Declaration that Defendants have been unjustly enriched;

k) An Order enjoining The Northern Club, its officers, agents, successors, employees, attorneys, assigns, and other representatives, and all those acting in concert with it at its direction, from engaging in any employment policy or practice which violates North Dakota State Law;

l) An Order requiring Defendants to make whole those persons adversely affected by the policies and practices described herein by providing appropriate back pay, and reimbursement for lost wages in an amount to be shown at trial;

m) A Declaration that Plaintiff and members of the ND Class are entitled to the value, *quantum meruit*, of the services rendered by them to the Defendant;

n) An Order requiring Defendant to pay back to Plaintiff and members of the ND Class the amounts representing Defendant's unjust enrichment and the value, *quantum meruit*, of the services rendered by them to the Defendant;

o) All applicable statutory damages to Plaintiff, the Nationwide FLSA Plaintiffs, and members of the ND Class;

p) Appropriate liquidated damages to Plaintiff, the Nationwide FLSA Plaintiffs, and members of the ND Class;

q) Reasonable attorneys' fees and costs of action incurred herein; and

r) Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

Dated: September 18, 2018        Respectfully Submitted,

By:   */s/ Gregory J. Myers*

Gregory J. Myers, ND #08225
Karen Hanson Riebel
**LOCKRIDGE GRINAL NAUEN P.L.L.P.**
100 Washington Ave. S., Suite 2200
Minneapolis, MN 55401
(612) 339-6900
(612) 339-0981  Facsimile
gjmyers@locklaw.com
khriebel@locklaw.com

Gary F. Lynch, Esq.
glynch@carlsonlynch.com
Pa. ID No. 56887
**CARLSON LYNCH SWEET KILPELA &
CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
(p) (412) 322-9243
(f) (412) 231-0246